UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EDWARD NEIDERT, | ) |
| Plaintiff, | ) |
| v. | ) 3:10-cv-479-RCJ-WGC |
| | ) **ORDER** |
| HOWARD SKOLNIK, *et al.*, | ) |
| Defendants. | ) |

Currently before the Court is Defendants' Motion for Summary Judgment (#33). The Court heard oral argument on October 3, 2011.

**BACKGROUND**

**I.     Complaint**

In August 2010, Defendants Howard Skolnik, individually, and the State of Nevada *ex rel.* its Department of Corrections (collectively "Defendants") removed this case based on federal question jurisdiction and attached Plaintiff Edward Neidert's complaint. (Pet. for Removal (#1) at 2; Compl. (#1-1)). The complaint alleged the following. Plaintiff had been employed by the Nevada Department of Corrections, but was terminated on May 27, 2010, under the pretext that he was a probationary employee. (Compl. (#1-1) at 4). Plaintiff alleged that the real reason he had been terminated was for "speaking out in public forums including the press and the Interim Finance Committee regarding closure of the Nevada State Prison and critiquing the legitimacy of Defendant's justifications to the IFC with respect to the closure of that institution." (*Id.*). Plaintiff alleged that his speech was protected by the First Amendment, that Defendant had been aware of the speech, and had rejected Plaintiff from

probation because of that speech. (*Id.*). Plaintiff alleged that his speech "fostered important Nevada public policy as evidenced in statutes and in the Nevada Constitution, to include the proper housing and well-being of inmates and the safety of the communities in which inmates [were] housed." (*Id.* at 5).

Plaintiff alleged two causes of action. (*Id.*). In the first cause of action, Plaintiff alleged that Skolnik had acted under color of State law, pursuant to 42 U.S.C. § 1983, and had violated Plaintiff's right to free speech under the First Amendment. (*Id.*). In the second cause of action, Plaintiff alleged that the State of Nevada was liable for Skolnick's actions pursuant to the theory of tortious discharge. (*Id.*).

## II.    Summary Judgment Exhibits

On May 27, 2010, Plaintiff received a letter from Donald Helling, Deputy Director of the Nevada Department of Corrections, stating that Plaintiff had failed to attain permanent status with the State of Nevada, Department of Corrections and was being rejected from probation effective that day. (Gov't Ex. C (#33-1) at 6). In his deposition, Plaintiff testified to the following. (Gov't Ex. D (#33-1) at 8). Plaintiff had written letters to the editors in the *Reno Gazette Journal* and the *Nevada Appeal* and had participated in their newspaper blogs. (*Id.* at 9). Plaintiff did not use his true name when he blogged and did not have any specific knowledge that Skolnik had specifically read Plaintiff's opinions or letters to the editor. (*Id.* at 10). When Plaintiff testified at the Internal Finance Committee ("IFC"), Skolnik was there. (*Id.*). Skolnik spoke to Plaintiff and stated that "he could agree to not closing the Nevada State Prison if the proposal that officers had put forward to go to 12-hour shifts, 84 hours per pay period as straight pay was okay with the officers, that he could back that." (*Id.* at 11). Skolnik also told Plaintiff that "[h]e also was at pains to say that he did not blame [the employees] for being down there in opposing the closure of NSP." (*Id.*). Plaintiff did not remember speaking to the IFC about "the proper housing and well-being of inmates and the safety of the inmate communities." (*Id.*). Plaintiff wore civilian clothes when he testified in front of the IFC. (*Id.*).

During the deposition, Plaintiff stated that he had testified during the special session of the Nevada Legislature in February 2010. (*Id.* at 12). At the special session, Plaintiff

testified "in favor of the proposal for 12-hour shifts, seven shifts per pay period, as straight pay as a method of reducing the department's budget by some two to five percent." (*Id.*). During that testimony, Plaintiff had worn his uniform. (*Id.* at 13). His testimony in favor of 12-hour shifts at straight pay related to the proper housing and well-being of inmates and safety of inmate conditions "[t]o the extent that it would allow full coverage by officers without [them] having to be on skeleton shifts . . . and without having to close Nevada State Prison." (*Id.* at 15). Plaintiff believed that he had been rejected from his probation for speaking out in public forums. (Pl. Ex. 1 (#37-1) at 6). He was aware of the administrative regulations that prohibited him from campaigning, lobbying, or engaging in other political activities during the hours of state employment, on state property, or in uniform. (*Id.* at 7). Plaintiff admitted that he was "off duty" when he had testified in front of the Legislature. (*Id.* at 8).

On June 29, 2009, Plaintiff had signed an acknowledgment that stated he had read and familiarized himself with the administrative regulations governing staff conduct, rules, and regulations. (Gov't Ex. F (#33-2) at 7). Pursuant to the regulations, an employee engaged in "improper political activity" by "[u]sing or promising to use any official authority or influence for the purpose of influencing the vote or political action of any person or for any consideration." (Gov't Ex. G. (#33-2) at 17). Accordingly to the Nevada Department of Corrections Administrative Regulation 350, "[t]he wearing of a uniform for off duty functions is not authorized." (Gov't Ex. H (#33-3) at 2, 17).

Skolnik testified to the following in his deposition. (Gov't Ex. E (#33-2) at 2). There was an investigation into Plaintiff's case, but he did not recall whether he or another deputy director had initiated it. (*Id.* at 3). Skolnik recalled that Plaintiff "was in uniform without any authorization testifying as if he were on the job at the time. And the suggestion [had been] made, since he was a probationary employee, that he be terminated from probation for that act." (*Id.*). Skolnik did not disagree with the termination recommendation, even though he could have if he wanted to. (*Id.*). Skolnik was not aware of any articles that Plaintiff had written for the newspaper. (*Id.* at 4). He did not read the *Reno Gazette-Journal* unless somebody gave him something specific to read. (*Id.*). Nobody had told him that an officer in uniform

3

while waiting to testify had called him a "damn liar." (*Id.*).

Helling testified to the following at his deposition. (Pl. Ex. 6 (#37-1) at 67). He was one of the deputy directors at the Department of Corrections. (*Id.*). The basis for ending Plaintiff's probation was that Plaintiff had violated several procedures and regulations by testifying in his uniform and making comments while in uniform prior to the hearing. (*Id.* at 68). Helling opened an investigation through the inspector general and informed the director that one had been opened. (*Id.* at 71). Helling discussed his findings and recommendation with Skolnik and Skolnik told Helling to "do what you feel is right." (*Id.* at 73). Skolnik did not assert any objections to the recommendation. (*Id.*).

On May 24, 2010, Helling reported his investigation findings to the Office of the Inspector General. (Gov't Ex. J (#33-3) at 23). Helling found that, on February 22, 2010, Plaintiff had engaged in improper political activity, i.e. using or promising to use any official authority or influence for the purpose of influencing the vote or political action of any person or for any consideration when he testified in a Senate hearing in uniform without the approval of the Director of Corrections. (*Id.* at 24). Helling also found that, on February 22, 2010, Plaintiff had engaged in unbecoming conduct, i.e. any conduct whether on or off duty which negatively reflects upon the image of the State of Nevada or the Department of Corrections when he was wearing his uniform in a Senate waiting room and made condescending remarks to other people about the Director of Corrections. (*Id.*). Helling stated that evidence showed that Plaintiff had called the Director a "liar" and a "bold face liar" while waiting to testify in uniform in a Senate waiting room. (*Id.*). Helling recommended that Plaintiff be "rejected from his probationary status." (*Id.* at 25). On May 25, 2010, Helling informed Plaintiff that the misconduct allegations had been sustained and that the recommended action was rejection from probation. (*Id.* at 26).

## LEGAL STANDARD

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## DISCUSSION

Defendants filed a motion for summary judgment. (Mot. for Summ. J. (#33) at 1). Defendants argue that Plaintiff fails to establish a claim for First Amendment retaliation

because he did not speak on a matter of public concern, did not speak as a private citizen, and cannot show that any of his speech was a motivating factor for his rejection from probation. (*Id.* at 9-10). Defendants also assert that they had a legitimate interest in terminating Plaintiff after he violated the policy that prohibited Plaintiff from wearing his uniform for an off-duty function. (*Id.* at 11). Defendants argue that Plaintiff cannot establish a claim for tortious discharge because there is nothing outrageous about disciplining an employee who is subject to discipline. (*Id.* at 12). Defendants also argue that Neidert has not established any evidence that Skolnik directed or participated in Plaintiff's discipline. (*Id.* at 14).

In response, Plaintiff responds that Assistant Director Don Helling rejected Plaintiff from probation. (Resp. to Mot. to Summ. J. (#37) at 2). Plaintiff asserts that Skolnik could have stopped the termination after Helling talked to him about recommending termination, but Skolnik did not object to the termination. (*Id.* at 6, 8).[1]

To assert a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that he was deprived of a constitutional right by a person acting under color of law. *Vang v. Toyed*, 944 F.2d 476, 479 (9th Cir. 1991). To establish a First Amendment retaliation claim against a government employer, a court must consider the following:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Desrochers v. City of San Bernardino*, 572 F.3d 703, 708-09 (9th Cir. 2009). Under the first step, the plaintiff bears the burden of showing that the speech addressed an issue of public concern based on the content, form, and context of a given statement, as revealed by the whole record. *Id.* A matter of public concern involves "issues about which information is

---

[1] Plaintiff states that Skolnik could be held liable for conspiracy under § 1983 with Helling. (Resp. to Mot. to Summ. J. (#37) at 9). To the extent that Plaintiff is attempting to raise a new cause of action for conspiracy in his opposition to summary judgment, the Court dismisses that attempt. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (holding that raising a new claim in a summary judgment motion is insufficient to present the claim to the district court).

needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Id.* at 710. Under the second step, the "plaintiff bears the burden of showing the speech was spoken in the capacity of a private citizen and not a public employee." *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009). Under the third step, the plaintiff bears the burden of showing that the State took an adverse employment action and that the speech was a substantial or motivating factor in the adverse action. *Id.*

Here, the Court finds that Plaintiff's Legislative testimony at the special session was a matter of public concern because Plaintiff linked his testimony to the proper housing and well-being of inmates and the safety of the inmate communities.[2] The Court also finds that Plaintiff testified as a private citizen because he was off-duty and had no official duty to deliver the speech at issue. Nevertheless, the Court finds that there is a genuine dispute of material fact as to whether Plaintiff's speech was a substantial or motivating factor in Plaintiff's termination based on the discussion at oral argument. At oral argument, Defendants' counsel stated that, although the Director did not encourage off-duty employees to testify in uniform, the Director had made exceptions after Plaintiff's termination. At oral argument, Defendants' counsel stated that the director had permitted off-duty, uniformed employees to testify before the Legislature as long as the employees stated on the record that they were testifying "off duty." The Court finds that, based on the statements made at oral argument, there is a genuine issue of material fact as to whether Plaintiff's speech, rather than his uniform violation, was a substantial or motivating factor for his termination.

Accordingly, the Court denies summary judgment on the First Amendment retaliation claim based on Plaintiff's speech at the Legislative special session. The Court also denies summary judgment on the tortious discharge claim. *See D'Angelo v. Gardner*, 819 P.2d 206,

---

[2] To the extent that Plaintiff alleges First Amendment retaliation based on newspaper blogs and testimony in front of the IFC, the Court grants summary judgment to Defendants. Plaintiff fails to demonstrate that Skolnik knew about the blogs and, therefore, cannot demonstrate that the blogs were a substantial motivating factor in his termination. Additionally, with respect to the IFC testimony, Plaintiff admits that he limited his speech to a discussion about how to save his job through shift and pay period changes, which is not a matter of public concern. (*See* Gov't Ex. D (#33-1) at 11-12).

212 (Nev. 1991) (holding that "[a]n employer commits a tortious discharge by terminating an employee for reasons which violate public policy").

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' Motion for Summary Judgment (#33) is DENIED.

IT IS FURTHER ORDERED that, per the discussions at oral argument, the parties engage in a settlement conference with Judge Cobb prior to trial.

DATED: This _7th_ day of October, 2011.

_____
United States District Judge